CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 02 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| LARRY R. SCHROCK, et al., | ) |
| Plaintiffs, | ) Civil Action No. 5:09cv00059 |
| v. | ) MEMORANDUM OPINION |
| LANCER INSURANCE COMPANY, et al., | ) |
| Defendants. | ) By: Samuel G. Wilson |
| | ) United States District Judge |

This is a declaratory judgment action pursuant to 28 U.S.C. § 2201, by plaintiffs, Schrock, Inc., a tour bus company that owns a fleet of tour buses, and the company's owners and officers, Dorothy and her husband Larry Schrock (the "Schrocks"), seeking: (1) a declaratory judgment that Schrock, Inc.'s motor vehicle liability insurer, Lancer Insurance Company ("Lancer"), by operation of Virginia Code § 38.2-2206, affords the Schrocks $5,000,000 in underinsured motorist ("UIM") coverage for injuries the Schrocks sustained in a rental vehicle when they were struck by a drunk driver operating her vehicle in the wrong direction on an interstate highway; (2) a declaratory judgment that the Schrock's personal automobile liability insurer, Nationwide Insurance Company ("Nationwide"), affords each of the Schrocks $100,000 in UIM coverage; (3) a declaratory judgment that the rental car company, Hertz Corporation ("Hertz"), affords the Schrocks UIM coverage up to $25,000 each subject to a first-priority credit for any amount of liability insurance coverage available for payment to the Schrocks under the underinsured tortfeasor's liability policy; and (4) a declaratory judgment concerning priorities of

the various coverages. There is complete diversity[1] and more than $75,000 in controversy exclusive of interest and costs and therefore diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Because the express provisions of the policy Lancer issued Schrock, Inc. afford no UIM coverage, and because § 38.2-2206 does not require UIM coverage for "insureds of the second class" (as are the Schrocks) in unlisted, non-substitute, rental vehicles, the court declares that Lancer affords the Schrocks no UIM coverage for their injuries. The court also declares that Nationwide affords each of the Schrocks $100,000 in UIM coverage and that Hertz affords each of them $25,000 in UIM coverage, minus any payment the Schrocks receive under the tortfeasor's liability policy.

## I.

Schrock, Inc. is a Pennsylvania corporation that initially operated school bus tours out of Berlin, Pennsylvania. Larry and Dorothy Schrock serve respectively as its president and secretary/treasurer and are its sole shareholders. According to the Schrocks, as the company's school bus tour business waned, the company expanded to "high end" tours throughout the country "geared" primarily to senior citizens. Over time, much of the business gravitated to the Winchester, Virginia area, the Schrocks moved their residence to that area in 1987, and Schrock, Inc. opened a maintenance facility in Frederick County, Virginia, close to Winchester. Eventually, more tours originated in the Winchester area than the Berlin area, and Schrock, Inc. closed its Berlin maintenance facility, although it continued to maintain an office in that area.

Until 2003, Schrock, Inc. obtained its motor vehicle liability insurance from Nationwide. However, according to Larry Schrock, Nationwide withdrew from the tour bus insurance market

---

[1] The Schrocks both reside in Winchester, Virginia. Schrock, Inc. is a Pennsylvania corporation with its principal place of business in Virginia. Lancer is incorporated in Illinois with its principal place of business in New York. Nationwide is incorporated in Wisconsin with its principal place of business in Ohio. Hertz is incorporated in Delaware with its principal place of business in New Jersey.

2

and Schrock, Inc. switched to Lancer, although the Schrocks remained with Nationwide for their personal coverage, which includes uninsured motorist ("UM")/UIM[2] coverage of $100,000 per person and 300,000 per accident. Pennsylvania law permits an insurer to reject UIM coverage but requires UM coverage of not less than $30,000. In its initial application, and in each successive renewal with Lancer, Schrock, Inc. represented that its entire fleet was principally garaged in Pennsylvania. With each renewal Lancer gave Schrock, Inc. notice of its right under Pennsylvania law to obtain UM/UIM coverage. Each time Larry Schrock, acting on behalf of Schrock, Inc., rejected UIM coverage to save the expense and selected the minimum UM coverage permitted in Pennsylvania for its listed vehicles only. Consequently, although the Lancer policy afforded $5,000,000 in liability coverage, it afforded only $30,000 in UM coverage, and no UIM coverage.

As a cost-saving measure, Schrock, Inc.'s fleet of "motor coaches", nineteen in all as of 2008, were always registered in Pennsylvania. According to Larry Schrock, registering in Pennsylvania was "an economic issue": Virginia, unlike Pennsylvania, had personal property taxes which he sought to avoid. Accordingly, when a dispute arose with Frederick County over the company's failure to pay Frederick County personal property taxes on the company's fleet of buses, the company responded that its buses were not garaged in Frederick County, and therefore it owed no personal property taxes there.

In 2005 an underwriter for Lancer became aware that Schrock, Inc. had a facility in Virginia and sent a Virginia UM/UIM selection form notifying Schrock, Inc. that its UM/UIM coverage limits would equal its liability coverage limits unless it selected a lesser amount. Larry

---

[2] Virginia Code § 38.2-2206 treats UM's and UIM's the same and the terms are often used interchangeably. A UM is a motorist without any insurance coverage while a UIM is a motorist who has less liability insurance coverage than the UM/UIM coverage of the injured party. See id. at B; Seals v. Erie Ins. Exch., 277 Va. 558, 563 n.2 (2009) (noting the similarity of UM and UIM coverage).

3

Schrock, on behalf of Schrock, Inc., selected "the lowest coverage limits" permitted in Virginia – "$25,000/50,000/20,000." The policy actually issued, however, continued to reflect Schrock, Inc.'s selections under the Pennsylvania UM/UIM selection forms.

On October 17, 2008, the Schrocks were nearing the end of the tour they were directing when a family member died. A Schrock, Inc. employee, Donald Meese, using a Schrock, Inc. credit card, rented a car in his own name from Hertz in Winchester, Virginia for the purpose of taking a relief driver to Tennessee to finish the tour and picking up the Schrocks and returning them to Winchester. The Hertz rental car agreement listed Meese as the only authorized driver. On their return trip to Winchester, a drunk driver operating her vehicle in the wrong direction on the interstate highway in Tennessee struck the Schrocks' rental vehicle while it was being operated by Larry Schrock. The accident killed Meese and severely injured the Schrocks.

The Schrocks maintain that their UM/UIM coverage exceeds the drunk driver's liability coverage and that she is therefore underinsured. They filed an amended complaint against Lancer for declaratory judgment in this court alleging that Schrock Inc.'s fleet of vehicles are principally garaged [or used] in Virginia and that their rights to UIM coverage, therefore, are governed by Virginia Code § 38.2-2206. They claim that § 38.2-2206 causes their UIM coverage to default to the policy's liability limits – $5,000,000 – in the absence of a proper rejection, and that Schrock, Inc. did not properly reject its liability limits as its UIM limits. They also seek a declaration concerning their UIM coverages with Nationwide and Hertz.

Nationwide concedes that its policy affords the Schrocks UIM coverage of $100,000 per person and $300,000 per accident, and Hertz concedes that as a self insurer, it affords each of the Schrocks $25,000 in UIM coverage, minus any payment the Schrocks might receive under the

drunk driver's liability policy. Lancer, however, denies that it affords the Schrocks any UIM coverage whatsoever.

Lancer moved for summary judgment on the ground that the Schrocks were not named or additional insureds under Lancer's policy or in a covered vehicle for UIM purposes; that Virginia code §38.2-2206 does not apply to the policy because Schrock, Inc.'s vehicles were not principally garaged or principally used in Virginia and, in any event, "insureds of the second class," such as the Schrocks, must be occupying a specifically listed vehicle to receive coverage under § 38.2-2206; and that even if Virginia Code §38.2-2206 applied, Schrock, Inc. rejected its liability limits as its UM/UIM limits and selected instead the minimum limits required for UM/UIM coverage in Virginia: $25,000/50,000/20,000. Lancer based its motion in part on the fact that the Schrocks were several days late in responding to Lancer's request for admissions. The Schrocks also moved for summary judgment.

The court notified the parties that it intended to excuse the Schrocks late responses to Lancer's request for admissions, that it was taking the parties' motions for summary judgment under advisement, and that it had identified one possibly pivotal factual dispute – the dispute as to whether any or all of Schrock, Inc.'s buses were principally garaged or used in Virginia – and that it intended to submit that question to a jury. Lancer responded that the discovery deadline had passed and that it had not engaged in additional discovery because of the Schrocks' late responses to Lancer's request for admissions and consequently it was not prepared to move forward without further discovery. The court permitted additional expedited discovery on the limited factual issues the court identified, the parties waived trial by jury, and the court heard the matter. The facts set forth above or recited elsewhere in this opinion are either undisputed or found by the court by a preponderance of the evidence adduced at trial.

## II.

The Schrocks maintain that although Schrock, Inc.'s policy did not expressly afford them UIM coverage, they obtained that coverage by operation of law through the application of Virginia Code § 38.2-2206. Lancer maintains that the Schrocks have failed to prove by a preponderance of the evidence that any of Schrock, Inc.'s buses were principally garaged or used in Virginia, a prerequisite to the application of Virginia Code §3 8.2-2206. Lancer further asserts that even if they had so proven, the Schrocks were, at best, "insureds of the second class," and § 38.2-2206 does not require UIM coverage for an insured of the second class who is injured while occupying an unlisted, non-substitute, rental vehicle. Though the court agrees with Lancer that the Schrocks have failed to prove by a preponderance of the evidence that any of Schrock, Inc.'s buses were principally garaged in Virginia,[3] it also agrees with the Schrocks, that more likely than not, at least one of those vehicles was principally used here.[4] However, the court will not belabor these findings because the court also agrees with Lancer that the Schrocks were, at best, insureds of the second class and §38.2-2206 does not require UIM coverage for an insured of the second class who is injured while occupying an unlisted, non-substitute, rental vehicle.[5] Accordingly, the court will enter a judgment declaring that Lancer's policy does not afford the Schrocks UIM coverage for the accident.

---

[3] In Schrock, Inc.'s policy, all of the listed vehicles were designated as principally garaged in Berlin, Pennsylvania. In response to interrogatories sent by Lancer, plaintiffs claimed that all of Schrock, Inc.'s vehicles were garaged in both Berlin and Winchester as needed for tours. Furthermore, in correspondence between Schrock, Inc. and Frederick County, Schrock, Inc. repeatedly affirmed that it did not have any vehicles garaged in Frederick County.

[4] Larry Schrock testified that Schrock, Inc.'s facility near Winchester was its primary facility and that most of its tours left from that location. A safety survey of Schrock, Inc.'s Virginia facility, completed by Lancer, supported these facts. Further, documentation submitted by Schrock, Inc. to Pennsylvania for Schrock, Inc.'s Apportioned Registration shows that its fleet drove more miles in Virginia than in any other state by a sizeable margin.

[5] The court notes some analytical or linguistic differences in the case law regarding whether those in the Schrocks' position should be labeled "insureds of the second class." Regardless of whether the Schrocks are "insureds of the second class" who are not entitled to UIM coverage because they were in an unlisted vehicle, or are not "insureds of the second class" at all, because they were in an unlisted vehicle, the result is the same – no UIM coverage from Lancer.

Section 38.2-2206 creates two classes of potential insureds "with different benefits accruing to each class." See Cunningham v. Ins. Co. of N. Am., 213 Va. 72, 75 (1972). The first class includes those named in the policy and their families. Stern v. Cincinnati Ins. Co., 252 Va. 307, 311 (1996) (overruled on other grounds). "Insureds of the second class are guest passengers in or permissive operators of the motor vehicle to which the policy applies." Id. at 311 (citing Ins. Co. of N. Am. v. Perry, 204 Va. 833, 837 (1964)). Where an employer is the only named insured, its employees may not be substituted by operation of law as named insureds in the employer's stead. See Ins. Co. of N. Am., 204 Va. at 836. Schrock, Inc. is the only named insured in its policy. Therefore, the Schrocks were, at best, insureds of the second class.

With these precepts in mind, Stone v. Liberty Mut. Ins. Co., 253 Va. 12 (1996), is instructive. Stone, a pizza delivery employee, was operating his personal vehicle within the scope of his employment when he was injured in a motor vehicle accident with an underinsured at-fault driver. Stone was not a named insured under his employer's policy with Liberty Mutual Insurance Company ("Liberty Mutual"), and the express provisions of the policy did not purport to provide him with UM/UIM coverage. However, his personal vehicle was expressly covered under his employer's policy for liability purposes when used in connection with his employer's business. The liability provisions of the policy expressly covered "non-owned automobiles . . . used in connection with [its] business". Id. at 15–16 (internal quotation marks omitted). Stone obtained a judgment against the at-fault driver and then, through a declaratory judgment action in state court, sought UM/UIM coverage from his Liberty Mutual. Liberty Mutual removed the case to federal court, where the district court found that Stone had UM/UIM coverage from Liberty Mutual under § 38.2-2206. Liberty Mutual appealed this decision to the Fourth Circuit, which then certified a question to the Virginia Supreme Court, essentially asking whether Stone

had UM/UIM coverage under his employer's insurance policy by operation of law under § 38.2-2206.

Stone argued that § 38.2-2206 required that he receive UM/UIM coverage from his employer's policy "because he was operating a 'covered auto' under the [policy's] liability provisions[,]" id. at 16, and § 38.2-2206 mandates co-extensive liability and UM/UIM coverage. The Supreme Court of Virginia disagreed and held that "[§ 38.2-2206] only requires, as to insureds of the second class, that UM/UIM coverage be provided to those who are in [vehicles] listed in the policy, as opposed to 'any' vehicle to which the policy might apply." Id. at 18.[6] The court examined the language of § 38.2-2206, compared it to other provisions of the Virginia Code, and held that the Legislature had not meant to require that UM/UIM coverage extend to insureds of the second class occupying unlisted vehicles. Applying the Virginia Supreme Court's decision, the Fourth Circuit reversed the district court's ruling because Stone did not have UM/UIM coverage by operation of law. Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 189 (4th Cir. 1997).

Although the court assumes without deciding that Lancer's liability policy covered the rental vehicle the Schrock were occupying,[7] it was nonetheless an unlisted vehicle. Because the Schrocks were riding in an unlisted, non-substitute[8] vehicle and were insureds of the second class vis-à-vis Lancer's policy, § 38.2-2206 does mandate UIM coverage from Lancer for the

---

[6] "[UM/UIM] coverage is meant to protect an insured motorist, his family and permissive users of his vehicle against the peril of injury by an uninsured wrongdoer, not to provide 'insurance coverage upon each and every uninsured vehicle to everyone.'" Bayer v. The Travelers Indem. Co., 221 Va. 5, 9 (1980) (quoting Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., 203 Va. 600, 603 (1962).

[7] Although Lancer argues that the rental car was rented for personal reasons by Meese, the car was rented using a Schrock, Inc. credit card by a Schrock, Inc. employee. Meese was paid by Schrock, Inc. for the time he spent driving to pick up the Schrocks.

[8] The court notes that Schrock, Inc.'s policy provides coverage for some substitute and replacement vehicles. Neither party has argued that the Hertz rental car was a substitute vehicle for any of the specifically listed vehicles in Schrock, Inc.'s policy. Whether the reasoning of Stone, 253 Va. 12, would apply to such vehicles is beyond the scope of the facts presented in this case.

accident. The Schrocks also do not have UIM coverage under the express provisions of Schrock, Inc.'s policy. Therefore, regardless of whether any of Schrock, Inc.'s vehicles are principally garaged or used in Virginia, the Schrocks would not have UIM coverage as it was neither statutorily mandated nor provided under Schrock, Inc.'s policy.

### III.

All parties are in agreement as to the legal duties of Nationwide and Hertz and the court grants their requested declaratory judgment. First, the court finds that Nationwide provides primary UIM coverage to the Schrocks under policies #58-37-E-092788 and #58-37-E-092787 in the amount of $100,000 each. Since no payment is due from Lancer, there is no need to address the issue of whether any payment from Nationwide will be made *pro rata*. Second, the court finds that Hertz is a certified self-insurer pursuant to Virginia Code § 46.2-368(B). Therefore, its UIM coverage limits for the Schrocks are Virginia's financial responsibility limits designated under Virginia Code § 46.2-472. See Va. Code § 46.2-368(B). Furthermore, Hertz's UIM coverage is secondary to Nationwide's coverage, see § 46.2-368(B), and Hertz is entitled to receive a first-priority credit for any amount of liability coverage available for payment to the Schrocks from the underinsured tortfeasor's liability policy. See § 38.2-2206(B); Catron v. State Farm Mut. Auto. Ins. Co., 255 Va. 31, 38 (1998).

### IV.

For the reasons stated above, the court declares that Lancer does not provide the Schrocks with UIM coverage, Nationwide provides the Schrocks with $100,000 each and Hertz provides them with $25,000 each in UIM coverage for their bodily injuries. Nationwide's UIM coverage is primary and Hertz's UIM coverage is secondary. Lastly, Hertz is entitled to receive a first-

priority credit for any amount of liability insurance coverage available for payment to the Schrocks under the underinsured tortfeasor's liability policy.

**ENTER**: March 2, 2011.

_____
UNITED STATES DISTRICT JUDGE